AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| The person of Jeanne Rather, more fully described in Attachment A | ) ) ) |

Case No.  **MJ21-041**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The person of Jeanne Rather, more fully described in Attachments A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1028A | Aggravated Identity Theft |
| 18 U.S.C. § 1344 | Bank Fraud |

The application is based on these facts:

✓ See Affidavit of Postal Inspector Anna Weller, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Anna Weller, Postal Inspector
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 01/25/2021 _____

_____
*Judge's signature*

City and state:  Seattle, Washington

Paula L. McCandlis, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF ANNA WELLER

STATE OF WASHINGTON )
                     )   ss
COUNTY OF KING       )

I, Anna Weller, a Postal Inspector with the U.S. Postal Inspection Service, having been duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Postal Inspector with the U.S. Postal Inspection Service ("USPIS"), and have been since June 2013. I am currently located at Seattle Division Headquarters assigned to the Mail Theft and External Crimes Team. I am also tasked as a Violent Crimes Specialist assigned to a nationwide special response unit for homicides and serious assault incidents involving postal workers. As a part of this assignment, I assist in training current Postal Inspectors at the Inspection Service Career Development Unit to familiarize them with homicide and sexual assault investigations. I was previously employed with the Auburn Police Department for fourteen years as a commissioned law enforcement officer, serving as a patrol officer for over five years and as a detective for over eight years. While assigned to the patrol unit, I served as a Field Training Officer for one year and, while assigned to the detective unit, I investigated property related crimes for over two years and violent crimes for over six years. During my assignment as a detective, I investigated thefts, forgeries, bank fraud, identity theft, robberies, rapes, assaults, child abuse, and homicides.

2.      As part of my duties as a Postal Inspector with USPIS, I investigate crimes related to the illegal or dangerous use of the mail system, with an emphasis on Post Office burglaries, mail theft, and crimes related to the theft of mail, including aggravated identity theft, bank fraud, and forgery. My training and experience include the investigation of hundreds of cases involving theft by deception, identity theft, bank fraud, forgery, and possession of stolen property. I have investigated the offenses on both local and federal levels for prosecution in city, county, and federal courts.

Affidavit of Postal Inspector Weller - 1
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.     My training includes, but is not limited to, the successful completion of the Basic Law Enforcement Academy through the Washington State Criminal Justice Training Commission and Basic Inspection Training through the Inspection Service Career Development Unit in Maryland.  I have attended over 1000 hours of in-service training in the form of seminars, lectures, and classroom study to enhance my investigative knowledge and to stay current with any changes or advancements in law enforcement.  I have also participated in and attended annual conferences held by the Northwest Fraud Investigators Association, the Financial Industry Mail Security Initiative, and the International Association of Financial Crimes Investigators.  I have also completed Economic Crimes Training through the Department of Justice.

4.     I make this affidavit from personal knowledge based on my participation in this investigation, including witness interviews by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.  The information outlined below is provided for the limited purpose of obtaining search warrants and does not contain all details or all facts of which I am aware relating to this investigation.

## PURPOSE OF AFFIDAVIT

5.     I make this affidavit in support of two applications for warrants authorizing the search of the following premises and person, which are further described below and in Attachments A to the respective applications (attached hereto and incorporated by reference as if fully set forth herein), for evidence, fruits and instrumentalities, as further described in Attachments B to the respective applications (attached hereto and incorporated by reference as if fully set forth herein), of the crimes of *Bank Fraud*, in violation of Title 18, United States Code, Section 1344, and *Aggravated Identity Theft*, in violation of Title 18, United States Code, Section 1028A, as described herein:

a.     Fresenius Kidney Care, Skagit Valley, located at 208 Hospital Parkway Suite A, Mount Vernon, WA 98273 (hereinafter, the "SUBJECT

Affidavit of Postal Inspector Weller - 2
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

PREMISES"), described in more detail in Attachment A to that warrant, which is incorporated herein; and

b.      The person of JEANNE RATHER ("RATHER"), described in more detail in Attachment A to that warrant, which is incorporated herein.

6.      Since this Affidavit is intended to show only that there is a sufficient factual basis for a fair determination of probable cause to support the Applications, I have not included every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for search warrants for the SUBJECT PREMISES and RATHER.

## STATEMENT OF PROBABLE CAUSE

7.      The USPIS is currently conducting an investigation into JEANNE RATHER for violations of Title 18, United States Code, Section 1344 (bank fraud) and Title 18, United States Code, Section 1028A (aggravated identity theft), relating to credit cards issued by Capital One Bank ("Capital One") in 2019.  RATHER stole personally identifiable information ("PII") from her victims, which she used to fraudulently obtain credit cards in the victims' names from Capital One.  RATHER then used these fraudulently obtained credit cards to make thousands of dollars in charges and defaulted on the payments, resulting in a total potential exposure of $137,500 and total losses of $106,089.57 to Capital One.

8.      RATHER is the clinic coordinator at Fresenius Kidney Care, Skagit Valley ("Fresenius"), a dialysis clinic located at the SUBJECT PREMISES.  A number of employees at Fresenius have learned that their PII, including their social security numbers and dates of birth, has been used to obtain credit cards from Capital One without their knowledge or authorization.  According to one victim employee, RATHER's position as Fresenius's clinic coordinator would allow her to access employees' personnel files, which would include the PII used to obtain credit cards in the victims' names.

9.      Records from Capital One relating to these credit card accounts and applications show that many of the unauthorized applications for credit cards in the

Affidavit of Postal Inspector Weller - 3
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  names of Fresenius employees are connected to RATHER and to other fraudulent

2  applications through overlapping mailing addresses, phone numbers, and/or IP addresses.

3  Moreover, transactions that have been completed using the credit cards demonstrate that

4  the charges to them were made by RATHER, including charges for airline tickets through

5  Alaska Air that were issued to RATHER and her family members.

6  **A.**   **Identification of the Victims**

7     10.   In July 2020, an investigator with Capital One contacted the USPIS

8  regarding an investigation into several fraudulent accounts that had been opened online.

9  The Capital One investigator had identified three credit cards that had been opened using

10  PII for three separate victims, each of which had been approved for a $25,000 limit.  The

11  Capital One investigator provided the USPIS with documentation showing that, after the

12  accounts had been opened in the victims' names, substantial charges had been made to

13  the cards, resulting in a total of $67,041.01 in loss to Capital One.

14     11.   Investigators with Capital One continued to investigate the fraudulent

15  accounts and later identified additional fraudulent accounts that had been opened using

16  other victims' PII, which are connected to RATHER or linked to known fraudulent

17  applications and accounts by overlapping mailing addresses, email accounts, and/or IP

18  addresses.  In total, investigators with Capital One have identified seven fraudulent

19  accounts and five declined applications that investigators believe were submitted by

20  RATHER between September 5, 2019 and January 3, 2020.  These fraudulent accounts

21  and applications were submitted using the PII of nine suspected victims, many of whom

22  are prior or current employees of Fresenius at the SUBJECT PREMISES.

23     12.   All of the victims who had accounts opened in their names have filed fraud

24  reports with Capital One, notifying Capital One that they did not file the applications or

25  authorize anyone to do so on their behalf.  I have interviewed two of these victims, who

26  both worked for Fresenius at the SUBJECT PREMISES and had Capital One accounts

27  opened in their names.  Both of these victims confirmed that the accounts were

28  fraudulently opened, and that they had not authorized anyone to open the accounts on

Affidavit of Postal Inspector Weller - 4
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

their behalf.  During the interview of one victim, K.E., she stated that RATHER was her supervisor at Fresenius and thereby had access to her personal information.  Moreover, K.E. recognized the names of three other victims as her co-workers at Fresenius, where she still works.

**B.    Identification of RATHER**

13.    Investigators with Capital One have provided the USPIS information concerning the fraudulent applications for credit cards that are believed to be associated with RATHER.  These applications were submitted online, and Capital One collects and has provided information regarding the date and time on which the application was submitted, contact information provided at the time the application was submitted, and the IP address from which the application was submitted.  For applications that were approved, Capital One has also provided USPIS with information regarding the transactions conducted using the account, any payments made on the balance for the account, and online activity for the account.

14.    In reviewing information provided by Capital One, postal records, financial records, databases, and publicly available information, I have found that the fraudulent applications and accounts can be associated with RATHER through contact information provided to Capital One at the time the application was submitted, IP addresses from which the applications were submitted, and the transactions and payments made on the accounts.  The following examples are provided to illustrate the connections between RATHER and the fraudulent applications, and they do not capture all of the evidence showing that RATHER submitted the fraudulent applications that is known to me at this time.

*i.    Mailing Addresses*

15.    The information provided by Capital One shows that the mailing addresses for almost all of the fraudulent applications can be associated with RATHER, either at her known home address, two P.O. boxes that she has rented, or the SUBJECT PREMISES (her place of work).  For example, a total of six applications in victims'

Affidavit of Postal Inspector Weller - 5
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   names, including two that were approved, list P.O. Box 532 at the Marysville Post Office

2   as the mailing address.[1]  Moreover, the mailing address for one account was changed to

3   P.O. Box 532 after the application was approved, and RATHER was added as an

4   authorized user of the account.  According to post office records, RATHER is the user of

5   P.O. Box 532.  She applied for the box on September 9, 2019, only one day before the

6   first fraudulent credit card application associated with this P.O. Box was submitted.  The

7   application for the P.O. Box lists a home address that is associated with RATHER in

8   Snohomish County parcel records and a license plate number that is registered to her in

9   Department of Licensing records.   P.O. Box 532 is also listed as the mailing address on a

10  Capital One account belonging to Stephen Rather, known to be RATHER's husband,

11  which is currently past due with a large balance.  Finally, I have reviewed surveillance

12  footage from as recently as August 2020 and have seen a woman who appears to be

13  RATHER accessing P.O. Box 532.

14         16.     In addition, two of the applications, including one that was approved, list

15  P.O. Box 578 at the Mount Vernon Post Office as the mailing address.  According to post

16  office records, RATHER is the user of that P.O. Box.  She applied for the box online,

17  listing Fresenius at the SUBJECT PREMISES as the business address.  A printed version

18  of the application, likely used by an USPS employee to verify RATHER's identity when

19  she came to the post office to obtain the key to the P.O. Box, has RATHER's home

20  address in Marysville handwritten on it.

21         17.     Finally, two other applications list the SUBJECT PREMISES, where many

22  of the victims have worked and where RATHER is the clinic coordinator, as a mailing

23  address.

24

25  _____

26  [1] Two of the applications list 1010 State Ave, Unit 532, Marysville, Washington, as the mailing
    address.  The Marysville Post Office is located at 1010 State Ave Marysville, WA and post

27  office boxes at the post office could be addressed directly to the PO Box or could list the actual
    street address with the PO Box added as a unit number.

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*ii.*       ***Phone Numbers***

18.    The information provided by Capital One further demonstrates that the contact phone number for many of the fraudulent credit card applications can be associated with RATHER.  For example, K.E. provided contact phone numbers for RATHER, listing her work cellular phone number as 360-403-6244, her personal cellular phone number as 360-913-0002, and the clinic landline number as 360-336-2978.  All of these numbers are associated with at least one fraudulent credit card application.  The phone number 360-403-6244 is listed as the contact number for three applications, including one that was approved.  The phone number 360-913-0002 is listed as the home number on three other fraudulent applications, including one that was approved.  Finally, the phone number 360-336-2978 is listed as the home number for one approved application.

19.    In addition to these phone numbers being associated with fraudulent applications, they are also associated with activity for some of the fraudulent accounts. The phone number 360-403-6244, RATHER's work cell number, accessed accounts online and received SMS messages relating to two of the fraudulent accounts. The phone number 360-913-0002, RATHER's personal cell number, received SMS messages relating to one of the fraudulent accounts.  Not surprisingly, the landline was not associated with any online activity on any of the accounts, likely due to the fact that a landline (versus a cellular phone) cannot be used to access websites or receive SMS messages.

*iii.*      ***Online Identifiers***

20.    Capital One also provided investigators with information regarding online activity for the fraudulent accounts and the IP addresses from which the fraudulent applications were submitted, which connected several of the applications to each other and provided further evidence that RATHER had submitted them.  For example, in September 2020, victim K.E. provided me with the IP address for the SUBJECT PREMISES, 192.243.72.74.  This IP address was used to submit four of the fraudulent

1  applications, two of which were approved, and was also used for several online logins to
2  three of the fraudulent accounts.

3       21.     In addition to capturing the IP addresses of all online activity related to the
4  accounts and applications, Capital One also captures information relating to the date and
5  time of online activity, the device ID and name for the device used to access the accounts,
6  the action that was taken online, and the phone number associated with the online
7  activity.  For three of the fraudulent accounts, Capital One's records show that they were
8  accessed online using the following devices: "iPhone (2)," "Jenneâs iPhone," and
9  "Jeanne's iPad."  Both "iPhone (2)" and "Jenneâs iPhone" are associated with phone
10 numbers believed to be used by RATHER in Capital One's records.

11      *iv.*       ***Fraudulent Transactions***

12      22.     A review of the transactions on the fraudulent accounts show that a
13 majority of them were made in the Marysville area, where RATHER lives.  Moreover,
14 over $50,000 in charges were made to Pixie Fashion Outlet, an on-line clothing retail
15 store owned by RATHER.  It appears that the domain name has expired, but as of July
16 23, 2020, I was able to access and view the business's website at
17 https://pixiefashionoutlet.com.  The terms of service for the website listed RATHER's
18 home address in Marysville, Washington.  Moreover, there is a Facebook profile with the
19 profile name "pixiefashionoutlet" that links to this website, and which is associated with
20 the phone number (360) 403-6244, believed to be RATHER's work cell phone number.
21 Based on my training and experience, I believe that RATHER made these fraudulent
22 charges to her own business in order to convert credit into a deposit into her bank
23 account, which would result in funds that she would more easily be able to use.

24      23.     Transactions conducted on one of the fraudulent accounts show that the
25 user of the account purchased tickets for air travel from Alaska Air using the account.
26 An investigator for Capital One contacted Alaska Airlines, provided the airline with the
27 confirmation codes for the purchased tickets, and learned that the tickets were issued in
28 the names of RATHER, her husband, and her two children.

Affidavit of Postal Inspector Weller - 8
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.   The SUBJECT PREMISES**

24.     Fresenius is part of the Fresenius Medical Care system and is located at the SUBJECT PREMISES.  The SUBJECT PREMISES is a kidney care clinic located in Suite A of a one-story office building at Skagit Regional Health in the Hospital Parkway Plaza.  The office building is light grey in color with a covered walkway around the southwest side, where the entrance and a parking lot are located.  The building is affixed with the numbers "208," and the words "Sonya Beard Hyperbaric Center," "Skagit Wound Healing Center," and "Skagit Regional Clinics Nephrology" are stenciled on the front window.

25.     Inside the building is a small lobby, which is reached by going through the entrance and passing through two sets of automatic sliding doors.  On the eastern side of this lobby is a set of glass double doors that open into the SUBJECT PREMISES, labelled as "Fresenius Kidney Care" and with "Suite A" written above the doorway.  I have been inside of the building and am familiar with the entrance to the SUBJECT PREMISES.  Once inside the lobby area outside of the glass double doors, I was able to see the door of RATHER's office, which is located in the reception area of the SUBJECT PREMISES and is marked by a nametag next to the doorway identifying RATHER as the Clinic Manager.  At the time I visited the SUBJECT PREMISES, the door to RATHER's office was open, and I was able to see what appeared to be the back of a computer monitor through the doorway.  I did not go any further into the SUBJECT PREMISES but, based on my interview with K.E., I believe that RATHER has a work laptop that she uses in her office, and which she may occasionally take home.  K.E. also informed me that the reception area has additional offices located off of it, used primarily by dietitians and other medical personnel, and a coded door to the treatment floor where dialysis can be administered to clinic clients.

26.     Based on my interview of K.E., I have contact information for RATHER's supervisor at Fresenius, who does not work at the SUBJECT PREMISES.  I do not have any information regarding this supervisor's knowledge of RATHER's fraud, or the

1  supervisor's relationship to RATHER, and have therefore not contacted this supervisor

2  regarding the investigation.

3  **D.     Probable Cause**

4        27.     There is probable cause to believe that evidence of RATHER's fraud will

5  be found at the SUBJECT PREMISES.  Not only does it appear that RATHER has been

6  accessing and stealing her employees' PII at and from the SUBJECT PREMISES, but

7  Capital One's records show that Fresenius' IP address and phone number, and

8  RATHER's work phone, were used to apply for and access some of the fraudulent

9  accounts.  Thereby, there is probable cause to believe that RATHER fraudulently applied

10  for credit card accounts through Capital One, sometimes while at the SUBJECT

11  PREMISES, and then later accessed those accounts while she was at the SUBJECT

12  PREMISES.  This all could have been conducted on her work cellular phone, personal

13  cellular phone, work computer, a tablet, or another unknown device.

14        28.     Moreover, there is probable cause to believe that RATHER utilized her

15  work computer to access the personal information of her employees with the intent of

16  committing identity theft.  Based on my training and experience, most businesses keep

17  employee personal information in secure locations, either in paper format or on a secure

18  electronic device or network.  Based on the investigation to date, there is probable cause

19  to believe that RATHER accessed her employees' personal information from such

20  locations, and that evidence of that fact will be found at the SUBJECT PREMISES.

21        29.     Finally, there is probable cause to believe that evidence of RATHER's

22  fraud will be found on her personal cellular phone and/or work cellular phone.  Records

23  from Capital One show that RATHER's personal cellular number and work number both

24  accessed fraudulent accounts online.  Based on my training and experience, I know that

25  individuals often keep their cellular phones on their person or within reach.  There is

26  therefore probable cause to believe that RATHER's cellular phones will be located on her

27  person.

28

Affidavit of Postal Inspector Weller - 10
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

29.     As described above and in Attachments B, this application seeks permission to search for evidence, fruits and/or instrumentalities that might be found at the SUBJECT PREMISES, in whatever form they are found.  One form in which the evidence, fruits, and/or instrumentalities might be found is data stored on digital devices[2] such as computer hard drives or other electronic storage media.[3]  Thus, the warrant applied for would authorize the seizure of digital devices or other electronic storage media or, potentially, the copying of electronically stored information from digital devices or other electronic storage media, all under Rule 41(e)(2)(B).

30.     *Probable cause.*  Based upon my review of the evidence gathered in this investigation, my review of data and records, information received from other agents and computer forensics examiners, and my training and experience, I submit that if a digital device or other electronic storage media is found at the SUBJECT PREMISES, there is probable cause to believe that evidence or fruits of the crimes of *Bank Fraud*, in violation of Title 18, United States Code, Section 1344, and *Aggravated Identity Theft*, in violation of Title 18, United States Code, Section 1028A, will be stored on those digital devices or other electronic storage media.  Information uncovered in this investigation demonstrates that digital devices or other electronic storage media are being used by RATHER to access and store the victims' personal information, obtain fraudulent credit card

---

[2] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.

[3] Electronic Storage media is any physical object upon which electronically stored information can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

applications in victims' names, use those credit cards to make purchases, and access the credit card accounts.  Information relating to the credit card applications and the associated accounts further demonstrate that RATHER has used digital devices and electronic storage media at the SUBJECT PREMISES to commit the crimes outlined above.  There is, therefore, probable cause to believe that evidence or fruits of the crimes of *Bank Fraud*, in violation of Title 18, United States Code, Section 1344, and *Aggravated Identity Theft*, in violation of Title 18, United States Code, Section 1028A, exists and will be found on digital device or other electronic storage media at the SUBJECT PREMISES, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be preserved (and consequently also then recovered) for months or even years after they have been downloaded onto a storage medium, deleted, or accessed or viewed via the Internet. Electronic files downloaded to a digital device or other electronic storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a digital device or other electronic storage media, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the digital device or other electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

Affidavit of Postal Inspector Weller - 12
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

31.     *Forensic evidence.*  As further described in Attachments B to the respective applications, these applications seek permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices or other electronic storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital devices or other electronic storage media located at the SUBJECT PREMISES because:

a.  Stored data can provide evidence of a file that was once on the digital device or other electronic storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the digital device or other electronic storage media that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the history of connections to other computers, the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device or other electronic storage media was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner and/or others

with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a digital device or other electronic storage media works can, after examining this forensic evidence in its proper context, draw conclusions about how the digital device or other electronic storage media were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device or other electronic storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information

Affidavit of Postal Inspector Weller - 14
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a digital device or other electronic storage media was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

32.     Based on inspection of the spreadsheets provided by Capital One, I am aware that digital devices and other electronic storage media were used to generate, store, and/or print documents used in the fraud scheme, and to submit fraudulent applications for credit cards and to access accounts remotely.  Moreover, based on victim interviews and physical surveillance of the SUBJECT PREMISES, there is reason to believe that there is a computer system currently located at the SUBJECT PREMISES.

## PAST EFFORTS TO OBTAIN ELECTRONICALLY STORED INFORMATION

33.     Because of the nature of the evidence that I am attempting to obtain and the covert nature of the investigation, including the fact that there does not appear to be an on-site supervisor at the clinic other than RATHER, I have not made any prior efforts to obtain the evidence based on the consent of any party who may have authority to consent. I believe, based upon the nature of the investigation and the information I have received, that if RATHER becomes aware of the investigation in advance of the execution of a search warrant, she may attempt to destroy any potential evidence, whether digital or non-digital, thereby hindering law enforcement agents from the furtherance of the criminal investigation.

## REQUEST FOR AUTHORITY TO CONDUCT OFF-SITE SEARCH OF TARGET COMPUTERS

34.     *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of premises for information that might be stored on digital devices or other electronic storage media often requires the seizure of the physical items and later off-site review consistent with the warrant.  In lieu of removing all of these

Affidavit of Postal Inspector Weller - 15
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  items from the premises, it is sometimes possible to make an image copy of the data on

2  the digital devices or other electronic storage media, onsite.  Generally speaking, imaging

3  is the taking of a complete electronic picture of the device's data, including all hidden

4  sectors and deleted files.  Either seizure or imaging is often necessary to ensure the

5  accuracy and completeness of data recorded on the item, and to prevent the loss of the

6  data either from accidental or intentional destruction.  This is true because of the

7  following:

    a.  *The time required for an examination*.  As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine the respective digital device and/or electronic storage media to obtain evidence.  Computer hard drives, digital devices and electronic storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b.  *Technical requirements*.  Digital devices or other electronic storage media can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises.  However, taking the items off-site and reviewing them in a controlled environment will allow examination with the proper tools and knowledge.

    c.  *Variety of forms of electronic media*.  Records sought under this warrant could be stored in a variety of electronic storage media formats and on a variety of digital devices that may require off-site reviewing with specialized forensic tools.

## **SEARCH TECHNIQUES**

27      35.  Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal

28  Rules of Criminal Procedure, the warrants I am applying for will permit seizing, imaging,

Affidavit of Postal Inspector Weller - 16
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    or otherwise copying digital devices or other electronic storage media that reasonably

2    appear capable of containing some or all of the data or items that fall within the scope of

3    Attachments B to the respective warrants, and will specifically authorize a later review of

4    the media or information consistent with the warrants.

5        36.    Fresenius ("the Company") is a functioning company that conducts

6    legitimate business.  The seizure of the Company's computers may limit the Company's

7    ability to conduct its legitimate business.  As with any search warrant, I expect that this

8    warrant will be executed reasonably.  Reasonable execution will likely involve

9    conducting an investigation on the scene of what computers, or storage media, must be

10   seized or copied, and what computers or storage media need not be seized or copied.

11   Where appropriate, officers will copy data, rather than physically seize computers, to

12   reduce the extent of disruption.  If employees of the Company so request, the agents will,

13   to the extent practicable, attempt to provide the employees with copies of data that may

14   be necessary or important to the continuing function of the Company's legitimate

15   business.  If, after inspecting the computers, it is determined that some or all of this

16   equipment is no longer necessary to retrieve and preserve the evidence, the government

17   will return it.

18       37.    Consistent with the above, I hereby request the Court's permission to seize

19   and/or obtain a forensic image of digital devices or other electronic storage media that

20   reasonably appear capable of containing data or items that fall within the scope of

21   Attachments B to the respective applications and to conduct off-site searches of the

22   digital devices or other electronic storage media and/or forensic images, using the

23   following procedures:

24   **A.    Processing the Search Sites and Securing the Data.**

25       a.  Upon securing the physical search site, the search team will conduct an
         initial review of any digital devices or other electronic storage media located at
26       the SUBJECT PREMISES described in Attachments A that are capable of
         containing data or items that fall within the scope of Attachments B to the
27       respective warrants, to determine if it is possible to secure the data contained

28

Affidavit of Postal Inspector Weller - 17
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

on these devices onsite in a reasonable amount of time and without jeopardizing the ability to accurately preserve the data.

b.  In order to examine the electronically stored information ("ESI") in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device or other electronic storage media that is capable of containing data or items that fall within the scope of Attachments B to the respective warrants.[4]

c.  A forensic image may be created of either a physical drive or a logical drive.  A physical drive is the actual physical hard drive that may be found in a typical computer.  When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive. A logical drive, also known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive).  Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive.  Law enforcement will only create an image of physical or logical drives physically present on or within the subject device.  Creating an image of the devices located at the search locations described in Attachments A will not result in access to any data physically located elsewhere.  However, digital devices or other electronic storage media at the search locations described in Attachments A that have previously connected to devices at other locations may contain data from those other locations.

d.  If based on their training and experience, and the resources available to them at the search site, the search team determines it is not practical to make an on-site image within a reasonable amount of time and without jeopardizing the ability to accurately preserve the data, then the digital devices or other

---

[4] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures.  When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties. Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence.  Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess. Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case.  Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

Affidavit of Postal Inspector Weller - 18
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

electronic storage media will be seized and transported to an appropriate law enforcement laboratory to be forensically imaged and reviewed.

**B.     Searching the Forensic Images.**

a.   Searching the forensic images for the items described in Attachments B may require a range of data analysis techniques.  In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant.  The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachments B to the respective warrants.  Those techniques, however, may necessarily expose many or all parts of a hard drive to human inspection in order to determine whether it contains evidence described by the warrant.

## REQUEST FOR SEALING

30.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of these applications, including the applications, this affidavit, and the search warrants.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation and disclosure of the search warrants, this affidavit, and/or these applications and the attachments thereto will jeopardize the progress of the investigation.  Disclosure of these materials would give the target of the investigation an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

## CONCLUSION

31.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of the crimes of *Bank Fraud*, in violation of Title 18, United States Code, Section 1344, and *Aggravated Identity Theft*, in violation of Title 18, United States Code, Section 1028A, are located at the SUBJECT PREMISES and on the person

Affidavit of Postal Inspector Weller - 19
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 of JEANNE RATHER, as more fully described in Attachments A to their respective

2 warrants. I therefore request that the court issue warrants authorizing the search of the

3 SUBJECT PREMISES and the person of JEANNE RATHER for the items more fully

4 described in Attachments B to their respective warrants, incorporated herein by reference,

5 and the seizure of any such items found therein.

6

7

8 _____

ANNA WELLER, Affiant

9 Postal Inspector, USPIS

10

11

12 The above-named agent provided a sworn statement attesting to the truth of the

13 foregoing affidavit by telephone on this 25th day of January, 2021.

14

15

16 _____

PAULA L. MCCANDLIS

17 United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

Affidavit of Postal Inspector Weller - 20
USAO #2020R00895

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970